In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1034

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NATHANIEL RUTH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 19-cr-20005 — **Michael M. Mihm**, *Judge.*

ARGUED JUNE 3, 2020 — DECIDED JULY 20, 2020

Before SYKES, *Chief Judge,* and BAUER and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* In what is becoming an all-too-familiar subject, this appeal raises a question about whether a state drug statute sweeps more broadly than its federal counterpart because the former includes a particular isomer of a substance that the latter does not. Nathaniel Ruth pleaded guilty to federal gun and drug charges and received an enhanced sentence due to his prior Illinois conviction for possession with intent

to deliver cocaine. The Illinois statute defines cocaine to include its positional isomers, whereas the federal definition covers only cocaine's optical and geometric isomers. Ruth now appeals and claims that the district court erred in sentencing him because, using the categorical approach, the overbreadth of the Illinois statute disqualifies his prior conviction as a predicate felony drug offense. We agree and therefore vacate Ruth's sentence and remand for resentencing.

## I. Background

We can be brief in our summary of the facts because this appeal raises challenges only to the application of sentencing enhancements, which present pure questions of law. In 2018, the Champaign, Illinois police department's Street Crime Task Force used a confidential source to conduct multiple controlled buys of drugs from Nathaniel Ruth. That investigation came to a head on December 5, 2018, when officers surveilling Ruth pulled him over while driving and arrested Ruth for driving with a revoked license. During the arrest, Ruth told the officers that there was a firearm in the vehicle. Officers subsequently executed a search warrant at Ruth's residence and recovered 2.9 grams of crack cocaine, 5.6 grams of powder cocaine, a counterfeit $100 bill, $2,250 in U.S. currency, and various drug paraphernalia.

A grand jury indicted Ruth on two counts: one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). The government then filed an information pursuant to 21 U.S.C. § 851 notifying Ruth that it intended to rely on a prior conviction as a predicate felony drug offense to enhance his sentence. Namely, the government intended to use a 2006 Illinois

conviction for possession of a controlled substance with intent to distribute, 720 ILCS 570/401(c)(2). The § 851 enhancement increased the statutory maximum sentence from twenty years in prison to thirty years. *See* 21 U.S.C. § 841(b)(1)(C). Ruth did not object to the government's § 851 notice.

After ironing out a defect in the indictment, Ruth eventually pleaded guilty to both counts without a plea agreement. The probation office determined that Ruth was a career offender because at the time of the instant offenses, he had at least two prior felony convictions for controlled substance offenses. *See* U.S.S.G. § 4B1.1. One of the prior convictions was the 2006 Illinois cocaine conviction noted above and subject of the § 851 enhancement, and the second was a 2010 Illinois conviction for possession with intent to deliver cannabis. Ruth's resulting Guidelines range was 188 to 235 months' imprisonment.

Ruth objected to his classification as a career offender. He argued that his 2006 Illinois conviction was not a "controlled substance offense" under U.S.S.G. §§ 4B1.1(a) and 4B1.2(b) because the Illinois statute he was convicted under, 720 ILCS 570/401(c)(2), is categorically broader than federal law and thus could not serve as a predicate felony controlled substance offense. Specifically, the Illinois statute prohibits possession of positional isomers of cocaine whereas the federal Controlled Substances Act does not. He similarly argued that the Illinois statute's definition of cocaine "analog" was categorically broader than the federal definition of a controlled substance "analogue." Despite his objections to the career offender designation, Ruth did not object to the § 851 sentencing enhancement based on the same 2006 Illinois conviction.

The government responded, primarily, that a plain reading of the career-offender guideline covered both federal and state definitions of controlled substance offenses. That is because the Guidelines, for purposes of the career offender enhancement, define a "controlled substance offense" as "an offense under *federal or state law*, punishable by imprisonment for a term exceeding one year, that prohibits … the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b) (emphasis added). The government also disputed Ruth's arguments as to the Illinois statute's divisibility and categorical breadth.

The district court agreed with the government "that the wording of the guideline is such that I don't think the analysis that defense counsel has made is the one that truly applies" and overruled Ruth's objection to the career offender enhancement. The court then sentenced Ruth to 108 months' imprisonment on each of Count One and Count Two, to be served concurrently. Ruth timely appealed.

## II. Discussion

Ruth challenges his sentence on two related grounds—both concerning his 2006 Illinois conviction for possession with intent to deliver cocaine. First, Ruth argues that the district court erred in applying the 21 U.S.C. § 851 sentencing enhancement because his 2006 Illinois conviction does not qualify as a prior "felony drug offense." And second, Ruth contends that the 2006 Illinois conviction is not a "controlled substance offense" under the Sentencing Guidelines and thus the court erroneously sentenced him as a career offender. As to both, his argument is principally the same: the Illinois statute is categorically broader than federal law. Though Ruth is

ultimately correct that the Illinois statute is broader and thus he is entitled to be resentenced without the § 851 enhancement, he is wrong that this conclusion applies equally to his Guidelines challenge to the career offender enhancement.

## A. Predicate Felony Drug Offense

Before sentencing, the government filed an information pursuant to 21 U.S.C. § 851 notifying Ruth of its intent to rely on his prior 2006 Illinois cocaine conviction as a qualifying predicate "felony drug offense" to enhance his sentence. Ruth did not object to the § 851 enhancement in the district court and thus forfeited the argument. Our review is for plain error only. Fed R. Crim. P. 52(b).

### 1. The categorical approach

Section 841(b)(1)(C), the applicable penalty provision for Ruth's instant federal cocaine conviction, provides that if a defendant has a "prior conviction for a felony drug offense," the statutory maximum term of imprisonment increases from twenty years' imprisonment to thirty years' imprisonment. 21 U.S.C. § 841(b)(1)(C). As used in the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, the term "felony drug offense" means:

> an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances.

21 U.S.C. § 802(44); *cf. Burgess v. United States*, 553 U.S. 124, 126 (2008) ("The term 'felony drug offense' contained in § 841(b)(1)(A)[] … is defined exclusively by § 802(44) ….").

Each of the four categories of covered drugs is also separately defined in § 802. *See* 21 U.S.C. § 802(17) (defining "narcotic drugs"); *id*. § 802(16) (defining "marihuana"); *id*. § 802(41)(A) (defining "anabolic steroid"); *id*. § 802(9) (defining "depressant or stimulant substance"). Relevant to this appeal, cocaine is a narcotic drug defined in § 802(17)(D), and is listed in the schedules of federally controlled substances at schedule II(a)(4), *id*. § 812.

To determine whether Ruth's prior Illinois conviction is a "felony drug offense" within the meaning of federal law, we apply the *Taylor* categorical approach. *United States v. Elder*, 900 F.3d 491, 497–501 (7th Cir. 2018) (citing *Taylor v. United States*, 495 U.S. 575 (1990)). Under the categorical approach, courts look solely to whether the elements of the crime of conviction match the elements of the federal recidivism statute. *Id*. at 501. "If, and only if, the elements of the state law mirror or are narrower than the federal statute can the prior conviction qualify as a predicate felony drug offense." *United States v. De La Torre*, 940 F.3d 938, 948 (7th Cir. 2019).

The Supreme Court recently clarified its categorical-approach jurisprudence in *Shular v. United States*, 140 S. Ct. 779 (2020). There are "two categorical methodologies," depending on the statute at issue. *Id*. at 783. In the first categorical methodology, some statutes require "the court to come up with a 'generic' version of a crime—that is, the elements of 'the offense as commonly understood.'" *Id*. (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2247 (2016)). We will refer to this first method as the generic-offense method. The archetypal example is *Taylor* itself, which confronted the Armed Career Criminal Act's "unadorned reference to 'burglary'" and required the Court to "identif[y] the elements of 'generic

burglary' based on the 'sense in which the term is now used in the criminal codes of most States.'" *Id*. (quoting *Taylor*, 495 U.S. at 598–99). The Court then matched the elements of the offense of conviction against those of the generic crime. *Id*. The second categorical-approach method, though, concerns statutes that do not reference a certain offense, but rather "some other criterion" as the measure for prior convictions. *Id*. The example given for this second methodology was where an immigration statute assigned consequences for a prior conviction for an offense that "involves fraud or deceit," and the Court simply looked to whether the prior offense's elements "necessarily entail fraudulent or deceitful *conduct*" as the appropriate measure. *Id*. (quoting *Kawashima v. Holder*, 565 U.S. 478, 483–85 (2012)). We will call this second method the conduct-based method.

In *Shular*, the Court held that the second categorical methodology—the conduct-based method—applies to determining whether a state offense is a "serious drug offense" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(A)(ii) (defining "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance"). The statute's text and context convinced the Court that it undoubtedly described *conduct*, not names of generic offenses. *Shular*, 140 S. Ct. at 785. In contrast, ACCA's "violent felony" provision refers to a crime that "is burglary, arson, or extortion," which unambiguously names offenses. *Id*. Therefore, a prior conviction qualifies as a predicate "serious drug offense" and triggers § 924(e)(2)(A)(ii)'s sentencing enhancement when the predicate offense involved "the *conduct* of 'manufacturing, distributing, or possessing with intent

to manufacture or distribute, a controlled substance.'" *Id*. at 787.

The conduct-based categorical approach applies here to § 841(b)(1)(C)'s sentencing enhancement. The term "felony drug offense" describes predicate offenses "that prohibit[] or restrict[] *conduct* relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44) (emphasis added). This unquestionably refers to conduct and not generic offenses. The task is simple, then, and the court asks only whether the prior conviction's elements necessarily entail the conduct identified in § 802(44). Indeed, even before *Shular*'s clarification, this court already implicitly employed the conduct-based categorical methodology for similar "felony drug offense" sentencing enhancements. *See, e.g.*, *United States v. Garcia*, 948 F.3d 789, 793 (7th Cir. 2020); *De La Torre*, 940 F.3d at 949; *Elder*, 900 F.3d at 497.

Here the government filed an information pursuant to 21 U.S.C. § 851(a) identifying Ruth's prior state court conviction under 720 ILCS 570/401(c)(2). The Illinois statute makes it unlawful to possess with intent to deliver "1 gram or more but less than 15 grams of any substance containing cocaine, or an analog thereof." 720 ILCS 570/401(c)(2). Illinois's schedule of controlled substances defines cocaine as:

> Coca leaves and any salt, compound, isomer, salt of an isomer, derivative, or preparation of coca leaves including cocaine or ecgonine, and any salt, compound, isomer, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions of coca leaves which do not contain cocaine or ecgonine (for the purpose of this paragraph,

the term "isomer" includes optical, positional and ge-
ometric isomers)[.]

720 ILCS 570/206(b)(4). For our purposes, the critical language
is the final phrase—Illinois's definition of cocaine includes
optical, positional, and geometric isomers. Under federal law,
cocaine is defined to include only its "optical and geometric
isomers." 21 U.S.C. § 812, Schedule II(a)(4); *see also id*.
§ 802(14) ("As used in schedule II(a)(4), the term 'isomer'
means any optical or geometric isomer."); *id*. § 802(17)(D) (de-
fining "narcotic drug" to include "[c]ocaine, its salts, optical
and geometric isomers, and salts of isomers"). On its face,
then, the Illinois statute is categorically broader than the fed-
eral definition.

Despite the statutory mismatch, the government responds
that the Illinois statute nonetheless "substantially corre-
sponds" to the federal statute and thus is not overbroad. The
argument finds its roots in *Quarles v. United States*, where the
Supreme Court admonished that "the *Taylor* Court cautioned
courts against seizing on modest state-law deviations from
the generic definition of burglary," and held that the relevant
question there was whether the state law "'substantially cor-
responds' to (or is narrower than) generic burglary." 139 S. Ct.
1872, 1880 (2019) (quoting *Taylor*, 495 U.S. at 602). But *Quarles*,
like *Taylor* itself, involved the generic-offense method of the
categorical approach that, when the statute at issue "refers
generally to an offense without specifying its elements," re-
quires a court as a preliminary step to "define the offense so
that it can compare elements, not labels." *Shular*, 140 S. Ct. at
783. This process of the court coming up with a generic ver-
sion of a crime must allow for some margin of inconsequential
discrepancy. Post-*Shular*, however, it is clear that looking to

whether the elements "substantially correspond" falls within a different categorical approach methodology and does not apply equally under the conduct-based method at play here. There are no minor deviations in offense elements to assess, only enumerated conduct.

Flowing from its reliance on the "substantial correspondence" between the Illinois and federal statutes, the government next argues that there is no basis to conclude that positional isomers of cocaine exist in the drug trade. In support of its assertion, during sentencing in the district court, the government submitted an affidavit of a retired DEA research chemist, John Casale. According to Agent Casale, during his tenure at the DEA he analyzed over 50,000 cocaine samples from law enforcement evidentiary seizures and did not identify any positional isomers of cocaine in any of those samples. This may be so, but Agent Casale does not actually aver that positional isomers of cocaine do not exist. And that is an important distinction. It is not the province of the judiciary to rewrite Illinois's statute to conform to a supposed practical understanding of the drug trade. This is particularly true here where the Illinois legislature purposefully included positional isomers of cocaine in its statute. Effective January 1, 1984, the legislature added the word "isomer" to the definition of cocaine. *People v. Godek*, 487 N.E.2d 810, 812 n.3 (Ill. 1986). Shortly thereafter, the legislature again amended the statute to expressly identify optical, positional, and geometric isomers, as it appears today. *See* Act of Sept. 8, 1985, § 1, 1985 Ill. Laws 2288, 2292–93. Though the government would have us believe that Illinois's inclusion of positional isomers of cocaine is "nothing but spilled ink," it was far from a potential drafting oversight. Illinois went from generically prohibiting "isomers" to expressly identifying the precise types of cocaine

isomers it sought to proscribe. We must give effect to the law as written.

We encountered nearly identical facts and arguments in *De La Torre*, save for the drug at issue being methamphetamine and its isomers, and we reach the same outcome. 940 F.3d at 950–52. Like there, the government offers theoretical challenges to positional isomers of cocaine but cannot avoid the inescapable conclusion that the plain language of the state statute categorically covers a larger swath of conduct than its federal counterpart. To be certain, in *De La Torre* we noted that we took no position on the scientific merits of the government's isomer-related arguments, nor do we here. *Id.* at 952 n.5. Although we left the door ajar for future science-based arguments, it was not an open-ended invitation to argue that every isomeric mismatch is mere surplusage. There may be an occasion where a state statute covers unquestionably nonexistent conduct, but we do not need to predetermine how that analysis will look. It is enough for us to say that where, as here, the state statute of conviction is plain and intentional, our job is straightforward: we compare the state statute to the federal recidivism statute at issue and ask only if the state law is the same as or narrower than federal law.

### 2. *Divisibility of 720 ILCS 570/401(c)(2)*

Ruth is not quite out of the woods yet. Even if his state statute of conviction is overbroad, the government urges that it is divisible. A statute is divisible if it "sets out one or more elements of the offense in the alternative." *Descamps v. United States*, 570 U.S. 254, 257 (2013). If so, we can apply what has been dubbed the modified categorical approach and "consult a limited class of documents" to determine which alternative element of the statute formed the basis of Ruth's 2006 Illinois

conviction. *Id*.; *Elder*, 900 F.3d at 502. The documents that a sentencing court may consult include the charging document, jury instructions, a written plea agreement, the transcript of a plea colloquy, or some comparable judicial record. *Shepard v. United States*, 544 U.S. 13, 20 (2005).

We start with the structure of the statute. Section 401, in general, makes it "unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled substance … , a counterfeit substance, or a controlled substance analog." 720 ILCS 570/401. Subsections (a) through (i), and numerous subparts, then proceed to set forth various controlled substances and respective quantities that each constitute separate violations of the Illinois Controlled Substances Act resulting in different penalties. Subsection (c), in part, provides as follows:

> (c) Any person who violates this Section with regard to the following amounts of controlled or counterfeit substances or controlled substance analogs, notwithstanding any of the provisions of subsections (a), (b), (d), (e), (f), (g) or (h) to the contrary, is guilty of a Class 1 felony. The fine for violation of this subsection (c) shall not be more than $250,000:
>
> > (1) 1 gram or more but less than 15 grams of any substance containing heroin, or an analog thereof;
> >
> > (1.5) 1 gram or more but less than 15 grams of any substance containing fentanyl, or an analog thereof;
> >
> > (2) 1 gram or more but less than 15 grams of any substance containing cocaine, or an analog thereof;

(3) 10 grams or more but less than 15 grams of any substance containing morphine, or an analog thereof;

…

(11) 50 grams or more but less than 200 grams of any substance containing a substance classified in Schedules I or II, or an analog thereof, which is not otherwise included in this subsection.

720 ILCS 570/401(c).

We pause here, though, to take a step back and clarify the relevant divisibility question. The government argues vaguely that the "relevant subsection" of the Illinois Controlled Substances Act is divisible. Though far from apparent, we think the government suggests merely that subsection (c) is divisible from the rest of section 401 overall. The text makes clear that 720 ILCS 570/401 is *generally* divisible. The provision has almost a dozen subsections and dozens more subparts, each regulating different drugs in different quantities. The government would have us stop there at this topline divisibility and immediately examine Ruth's *Shepard*-approved documents to determine the specific conduct—or here, substance—underlying Ruth's state court conviction. General statute divisibility, however, is not enough. The modified categorical approach is just that: a modification of the categorical approach that simply acts as a "tool for implementing the categorical approach." *Descamps*, 570 U.S. at 262. "It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Id.* at 263. To put it more succinctly, the modified categorical approach helps a

court find out which crime the defendant was convicted of when the statute lists several alternative crimes. *Id*. at 263–64.

No one disputes that Ruth was convicted under subsection (c)(2). So it does not matter for our purposes that the higher level subsections (a), (b), (c), and so on are divisible from each other—we can place Ruth's conviction in the more particular subdivision without recourse to any extra-statutory *Shepard* documents. The only question that matters, then, is whether subsection (c)(2) is itself divisible. As we alluded to above, the government does not appear to argue that subsection (c)(2) is divisible, nor could it; the statutory provision is clearly indivisible. Section 401(c)(2) lists only one crime: possession with intent to distribute cocaine. Though the Illinois statute may define cocaine overbroadly, there is no uncertainty as to what statutory offense formed the basis of Ruth's crime of conviction and our inquiry ends there. Ruth's 2006 Illinois conviction under 720 ILCS 570/401(c)(2) is not a predicate "felony drug offense" that triggers 21 U.S.C. § 841(b)(1)(C)'s sentencing enhancement.

### 3. Plain error

Because Ruth's 2006 Illinois conviction under 720 ILCS 570/401(c)(2) is not a predicate "felony drug offense" under his applicable federal penalty statute, 21 U.S.C. § 841(b)(1)(C), the district court erred in sentencing Ruth with the statutory enhancement. To satisfy plain error review, however, the error must have been plain and must have affected Ruth's substantial rights before we will exercise our discretion to correct it. *See United States v. Olano*, 507 U.S. 725, 732 (1993). And even then, we will exercise that discretion only if the error "seriously affect[s] the fairness, integrity or public reputation of

judicial proceedings." *Id*. at 736 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

An error is plain if it is "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). That is to say that "while the error must be straightforward, it can be so in hindsight." *United States v. Caputo*, 978 F.2d 972, 975 (7th Cir. 1992). The error must be plain, "but it needn't be blatant." *Id*. After all, "plain-error review is not a grading system for trial judges." *Henderson v. United States*, 568 U.S. 266, 278 (2013). Though the parties missed the argument, they did not miss the core issue. Ruth objected to the career offender enhancement under the Guidelines based on his 2006 Illinois conviction for the same categorical-overbreadth reasons he now makes in relation to the § 851 sentencing enhancement. That the precise issue and arguments were raised shows that the error was clear. That no one recognized the additional application of the objection to his prior conviction does not render the error so imperceptible as to except it from review.

The error here affected Ruth's substantial rights because the enhancement increased his Guidelines range. Without the § 851 enhancement, Ruth's Guidelines range would have been 151 to 188 months.[1] The § 851 enhancement, which raised the statutory maximum sentence and thus increased his offense level, resulted in a higher Guidelines range of 188 to 235 months. Although the district court ultimately sentenced Ruth to 108 months' imprisonment, below either Guidelines range, in the ordinary case the Guidelines range will "anchor the court's discretion in selecting an appropriate

---

[1] This includes the career offender enhancement.

sentence." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1349 (2016). "It follows, then, that in most cases the Guidelines range will affect the sentence." *Id*. "We have repeatedly held that '[a] sentencing based on an incorrect Guidelines range constitutes plain error and warrants a remand for resentencing, unless we have reason to believe that the error in no way affected the district court's selection of a particular sentence.'" *United States v. Martin*, 692 F.3d 760, 766 (7th Cir. 2012) (quoting *United States v. Farmer*, 543 F.3d 363, 375 (7th Cir. 2008)). There is nothing in the sentencing transcript that would give us any reason to believe that the increased Guidelines range did not affect the district court's chosen sentence. "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez*, 136 S. Ct. at 1345. Because the plain Guidelines error here risks an unnecessary deprivation of Ruth's liberty, and given "the relative ease of correcting the error," *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018), leaving this error uncorrected would undermine the "fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736. We therefore vacate Ruth's sentence and remand.

## B. Career Offender Enhancement

Ruth also contends that his 2006 Illinois conviction is not a "controlled substance offense" under the Guidelines and thus argues he was erroneously sentenced as a career offender as well. Ruth objected to the career offender enhancement at sentencing and preserved this challenge. Whether a prior offense is a predicate controlled substance offense under the

Guidelines is a question of law that we review de novo. *United States v. Tate*, 822 F.3d 370, 375 (7th Cir. 2016).

A defendant is a career offender if, among other requirements, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). As used in the career-offender guideline, the term "controlled substance offense" is defined as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

*Id*. § 4B1.2(b). The Guidelines do not further define "controlled substance," so Ruth's argument in this instance is premised on incorporating the federal Controlled Substances Act's definition of controlled substance (and its schedules of enumerated substances) into the career-offender guideline. *See* 21 U.S.C. § 802(6). Doing so would lead to the same result we reached above—the Illinois statute covering positional isomers of cocaine is broader than the federal definition of cocaine and thus his 2006 conviction cannot serve as a predicate controlled substance offense.

The fatal flaw in Ruth's logic is that the career-offender guideline, and its definition of controlled substance offense, does not incorporate, cross-reference, or in any way refer to the Controlled Substances Act. This is significant. The Sentencing Commission clearly knows how to cross-reference

federal statutory definitions when it wants to. Indeed, in the very same definitional section for the career-offender guideline, the Commission defined "crime of violence" to incorporate the definition of firearm from 26 U.S.C. § 5845(a) and "explosive material as defined in 18 U.S.C. § 841(c)." U.S.S.G. § 4B1.2(a)(2). Elsewhere, § 2D1.1 of the Guidelines expressly provides that it applies to "'counterfeit' substances, which are defined in 21 U.S.C. § 802," and tells us that "'analogue,' for purposes of this guideline, has the meaning given the term 'controlled substance analogue' in 21 U.S.C. § 802(32)." U.S.S.G. § 2D1.1 cmt. nn.4 & 6. Yet, no such signal is anywhere in the career-offender guideline's definition for controlled substance offense. What is perhaps even more telling, when the Guidelines were first introduced, the Sentencing Commission defined the term "controlled substance offense" in the career offender provision to mean "an offense identified in 21 U.S.C. §§ 841, 952(a), 955, 955a, 959; §§ 405B and 416 of the Controlled Substance Act as amended in 1986, and similar offenses." U.S.S.G. § 4B1.2(2) (1987). Shortly thereafter, the Commission amended the definition to what is substantially, and substantively, its current form, without any cross-references. *See id*. § 4B1.2(2) (1989). Ruth offers no compelling reason for us to now import the federal definition of controlled substance on our own.

We addressed a similar question in *United States v. Hudson*, whether, under the Sentencing Guidelines, crimes involving phony versions of illegal drugs are properly characterized as controlled substance offenses, and it guides us here. 618 F.3d 700, 701 (7th Cir. 2010). The defendant in that case was convicted of possession of a firearm by a felon under 18 U.S.C. § 922(g) and was subject to a sentencing enhancement under U.S.S.G. § 2K2.1(a)(4)(A) if he had a prior felony conviction

for a controlled substance offense. *Id*. at 702. Section 2K2.1 of the Guidelines does not define "controlled substance offense," but instead takes the "meaning given that term in § 4B1.2(b) and Application Note 1 of the Commentary to § 4B1.2." U.S.S.G. § 2K2.1 cmt. n.1. Turning to § 4B1.2(b), we found that the "definition lays out our guide-posts: controlled-substance offenses include state-law offenses related to controlled or counterfeit substances punishable by imprisonment for a term exceeding one year." *Hudson*, 618 F.3d at 703. But Hudson "was convicted of an Indiana offense related to a substance masquerading as a controlled substance, not under Indiana's law addressing counterfeit substances." *Id*. So it was not clear whether his prior conviction was an offense related to "counterfeit substances." The guideline does not define "counterfeit substance," however, and we saw no reason to restrict the definition "to a particular state's concept of what is meant by that term." *Id*. Instead, we looked more broadly to how the term is commonly understood and gave it its natural meaning. *Id*.

Notwithstanding our conclusion in *Hudson*, Ruth instead points to our decision in *United States v. Smith*, 921 F.3d 708 (7th Cir. 2019), and asserts that we have already agreed with his reading of the Guidelines. In *Smith*, the defendant challenged whether "his conviction under Indiana's 'Dealing in cocaine or narcotic drug' statute, Ind. Code § 35-48-4-1, is … a predicate controlled substance offense under § 4B1.2(b) of the Guidelines." *Id*. at 712. Though *Smith* applied the categorical approach to determine whether the elements of his prior conviction matched the generic version of the offense, we said nothing about incorporating the federal Controlled Substances Act's definition of "controlled substance" into the Guidelines. Rather, we were primarily concerned with

whether the elements of the Indiana crime "match the Guidelines' definition of a controlled substance: (1) possession (2) of a controlled substance (3) with the intent to distribute that substance." *Id*. at 715–16. As to that, we found the elements easily matched. But in *Smith* we did not have the occasion to consider the question before us now.

We recognize that a circuit split exists on this issue, and that the weight of authority favors Ruth. As far as we are aware, the Second, Fifth, Eighth, and Ninth Circuits have all concluded that "controlled substance" in U.S.S.G. § 4B1.2(b) refers to the federal definition. Most recently, the Second Circuit applied the so-called *Jerome* presumption that as a general rule "the application of a federal law does not depend on state law unless Congress plainly indicates otherwise." *United States v. Townsend*, 897 F.3d 66, 71 (2d Cir. 2018) (citing *Jerome v. United States*, 318 U.S. 101, 104 (1943)). The court also found that *Taylor* and the Supreme Court's subsequent categorical-approach cases "reinforce the idea that imposing a *federal* sentencing enhancement under the Guidelines requires something more than a conviction based on a state's determination that a given substance should be controlled." *Id*. For those reasons, the Second Circuit was "confident that federal law is the interpretive anchor to resolve the ambiguity" over the definition of "controlled substance offense." *Id*. "Any other outcome would allow the Guidelines enhancement to turn on whatever substance 'is illegal under the particular law of the State where the defendant was convicted,' a clear departure from *Jerome* and its progeny." *Id*.

Our colleagues on the Fifth, Eighth, and Ninth Circuits all considered a different provision of the Guidelines and a different term, but applied the same basic reasoning. The Ninth

Circuit held that the meaning of "drug trafficking offense" under U.S.S.G. § 2L1.2 "should not 'depend on the definition adopted by the State of conviction'" because it would be inconsistent with the principles underlying the *Taylor* categorical approach. *United States v. Leal-Vega*, 680 F.3d 1160, 1166 (9th Cir. 2012); *see also United States v. Gomez-Alvarez*, 781 F.3d 787, 793 (5th Cir. 2015) (adopting reasoning of *Leal-Vega* for same guideline provision); *United States v. Sanchez-Garcia*, 642 F.3d 658, 661 (8th Cir. 2011) (interpreting same guideline provision and using the federal Controlled Substances Act definition of "controlled substance").

On the other side of the ledger are the Sixth and Eleventh Circuits—albeit in unpublished opinions only. The Sixth Circuit first addressed the issue in *United States v. Smith*, where the defendant "argue[d] that because the list of controlled substances criminalized under Illinois law [720 ILCS 570/401] includes a substance that is not prohibited under federal law, his prior convictions cannot serve as predicate controlled-substance offenses." 681 F. App'x 483, 488 (6th Cir. 2017). The Sixth Circuit disagreed:

> [B]ecause the Guidelines specifically include offenses under state law in § 4B1.2, the fact that Illinois may have criminalized the 'manufacture, import, export, distribution, or dispensing' of some substances that are not criminalized under federal law does not prevent conduct prohibited under the Illinois statute from qualifying, categorically, as a predicate offense. Smith's prior convictions under 720 Ill. Comp. Stat. § 570/401(d) thus are predicate offenses.

*Id*. at 489. Simply, "there is no requirement that the particular controlled substance underlying a state conviction also be

controlled by the federal government." *Id*. In a subsequent opinion, the Sixth Circuit reiterated *Smith*'s holding and added that "[i]n crafting the federal sentencing Guidelines and substantive federal criminal laws, Congress was well aware of the significant variations that existed in state criminal law." *United States v. Whitfield*, 726 F. App'x 373, 376 (6th Cir. 2018). *But see United States v. Pittman*, 736 F. App'x 551, 553 (6th Cir. 2018) (defining "controlled substance" in U.S.S.G. § 4B1.2(b) by reference to the Controlled Substance Act, 21 U.S.C. § 802(6), without citing *Smith* or otherwise providing any analysis or reasoning). And just recently, the Sixth Circuit recognized the circuit split on this question but explicitly "decline[d] to adopt the reasoning embraced by our sister circuits" in *Townsend*, *Leal-Vega*, and *Sanchez-Garcia*. *United States v. Sheffey*, — F. App'x —, 2020 WL 3495944, at *6 (6th Cir. June 29, 2020). Instead, the court continued to embrace *Smith*'s reasoning and held that "the career offender enhancement … does not limit its definition of controlled substance offense to specific federal violations." *Id*. We think that the Sixth and Eleventh Circuits have the better take of the issue.

But we are not joining a side today; we have already staked out our position in *Hudson*. Granted, in *Leal-Vega*, the Ninth Circuit distinguished the reasoning of our *Hudson* decision as to the term "counterfeit substance" because "[t]he word 'counterfeit' has a normal, everyday meaning that we all understand," whereas "[t]he same is not true of the word 'controlled.'" *Leal-Vega*, 680 F.3d at 1166–67. "While the word 'controlled' may have a plain and ordinary meaning, whether a substance is 'controlled' must, of necessity, be tethered to some state, federal, or local law in a way that is not true of the definition of 'counterfeit.'" *Id*. at 1167. But none of the

reasoning in *Hudson* turned on the specific word "counterfeit" having some sort of special independent, everyday meaning that sets it apart from other words. Indeed, that seems to draw an arbitrary line between how we interpret one term versus another term in the very same definition. We see no textual basis to engraft the federal Controlled Substances Act's definition of "controlled substance" into the career-offender guideline.

The career-offender guideline defines the term controlled substance offense broadly, and the definition is most plainly read to "include state-law offenses related to controlled or counterfeit substances punishable by imprisonment for a term exceeding one year." *Hudson*, 618 F.3d at 703. A controlled substance is generally understood to be "any of a category of behavior-altering or addictive drugs, as heroin or cocaine, whose possession and use are restricted by law." *Controlled substance*, The Random House Dictionary of the English Language (2d ed. 1987). Given the natural meaning of a controlled substance, Ruth's 2006 cocaine conviction under Illinois law is a controlled substance offense according to the career-offender guideline.

### III. Conclusion

Although the district court properly sentenced Ruth as a career offender, his Guidelines range was further elevated due to the increase in his statutory maximum sentence as a result of the erroneous § 851 sentencing enhancement. Because the district court calculated an incorrect Guidelines range, we VACATE Ruth's sentence and REMAND to the district court for resentencing.