In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-1591

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

SHANNON L. COTTON,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:07-cr-20019-MMM-EIL-1 — **Michael M. Mihm**, *Judge.*

_____

ARGUED DECEMBER 12, 2023 — DECIDED JULY 26, 2024

_____

Before SCUDDER, ST. EVE, and PRYOR, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Shannon Cotton violated his su-
pervised release by using cocaine and losing all contact with
his probation officer. After the district court revoked the re-
lease, a dispute arose over the maximum period of imprison-
ment Cotton could face for the violations. The district court
determined that the answer was two years, disagreeing with
the government's contention that Cotton faced a maximum
revocation sentence of five years. The question is difficult but,

in the end, we conclude the answer is five years based on the language Congress used in 18 U.S.C. § 3583(e)(3). That leads us to vacate Cotton's revocation sentence and to remand for resentencing.

## I

Even though the question presented is primarily one of statutory construction, the issue presented arises from a complex procedural history. What's important is keeping track of Cotton's original conviction and sentence, the discretionary sentence reduction he later received, and intervening changes in law.

Everything began in 2007, when Cotton pleaded guilty in federal court to two counts of violating 21 U.S.C. § 841(a)(1), (b)(1)(B) for distributing and possessing with intent to distribute at least five grams of cocaine. Each count brought with it a mandatory minimum term of five years' imprisonment and a maximum term of forty years. See *id.* § 841(b)(1)(B), (b)(1)(B)(iii) (2007). But Cotton's sentencing exposure increased to a mandatory minimum of 10 years and a maximum of life because the government, as was its right, invoked 21 U.S.C. § 851 and filed prior felony information based on Cotton's two prior Illinois felony convictions for possessing and delivering cocaine in violation of 720 ILCS 570-401(c)(2), (d)(i).

At sentencing the district court applied the Sentencing Guidelines, determined that Cotton qualified as a career offender, and imposed a sentence of 262 months (almost 22 years) and eight years of supervised release.

In 2010, and while Cotton was serving his sentence, Congress passed the Fair Sentencing Act. See Pub. L. 111-220, 124

Stat. 2372 (Aug. 3, 2010). The statute altered the threshold of crack cocaine required to trigger certain statutory minimum and maximum sentences under 21 U.S.C. § 841—the statute under which Cotton had been convicted. Specifically, Congress increased the quantity of cocaine necessary to trigger a mandatory minimum five-year term of imprisonment from 5 grams to 28 grams. By its terms, however, the Fair Sentencing Act applied only prospectively, not retroactively.

The law later changed again, this time in a way favorable to Cotton. In 2018 Congress enacted the First Step Act, giving district courts the discretion to resentence an applicant "as if" the new penalties of the Fair Sentencing Act were in effect at the time of the commission of the offense. See Pub. L. 115-391, 132 Stat. 5194 (Dec. 21, 2018). Cotton noticed the change in law and moved for a reduction in his sentence. The district court granted his motion and, in its discretion, reduced Cotton's sentence from 262 months to 188 months. The district court's order also expressly stated that "[e]xcept as provided above, all provisions of the [original] judgment dated 11/20/2007 shall remain in effect."

Cotton finished serving his sentence in the fall of 2020 and began his term of supervised release. As too often happens, though, Cotton's struggle with substance abuse and drug dealing got the better of him, leading in time to his probation officer petitioning the district court to revoke supervised release based on positive tests for using cocaine and marijuana and being arrested for possessing a sizeable quantity of marijuana.

A dispute then arose about the maximum revocation sentence Cotton faced for his violations of supervised release. Consistent with the view of the Probation Office, the

government took the position that the answer was five years. But Cotton believed any revocation sentence could not exceed two years. The different perspectives rooted themselves primarily in competing interpretations of 18 U.S.C. § 3583(e)— the statutory provision addressing maximum penalties attaching to revocations of supervised release.

The district court grappled with the statutory questions and in the end sided with Cotton and imposed a revocation sentence of two years with a new three-year term of supervised release to follow.

The government now appeals, renewing the legal contentions it pressed in the district court.

## II

### A

The proper starting point is § 3583(e)(3), which tell us that a court, upon finding a violation of supervised release, may

> revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release ... except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case.

*Id.* § 3583(e)(3).

Notice at a basic level how Congress structured this provision: by hinging the maximum revocation sentence upon the class of felony—A, B, C, or D—of the offense of conviction. What the parties dispute is the measurement point—whether the § 841 conviction is a class A, B, C, or D felony as a function of Cotton's 2007 judgment (the government's view) or, instead whether the class of felony turns on what the conviction and sentence would be under current law (Cotton's view).

An altogether different statute—18 U.S.C. § 3559—provides an essential link in the chain of reasoning necessary to answer who has the better interpretation of § 3583(e)(3). Class A felonies are those with a maximum prison sentence of life. 18 U.S.C. § 3559(a)(1). Class B felonies are those with a maximum term of 25 years or more (but less than life). *Id.* § 3559(a)(2). Class C felonies are those with a maximum term of 10 to 25 years in prison. *Id.* § 3559(a)(3). And, finally, class D felonies are those whose maximum is less than ten but five or more years. *Id.* § 3559(a)(4).

Returning to § 3583(e)(3), both sides insist that the statute's plain language supports their respective positions, with the government urging us to focus on Congress's use of the past tense when stating that the class-of-felony determination depends on "the offense that resulted in such term of supervised release." For the government, then, Cotton faced a maximum revocation sentence of five years because his original conviction in 2007 under § 841(a) and (b)(1)(B) exposed him to a maximum sentence of life imprisonment—a class A felony. The government gets there by reminding us that its filing of the § 851 prior felony information in Cotton's original case

had the effect of increasing the statutory maximum sentence from 40 years to life.

Cotton advances a different interpretation of § 3583(e)(3), directing our attention to Congress's use of the present tense for determining what the class of Cotton's original offense of conviction would be today—not, as the government would have it, what it was in 2007. To put the point in statutory terms, Cotton implores us to ask more generally whether an equivalent § 841 offense "is" (if it resulted in conviction today) a class A, B, C, or D felony.

Asking the question in the present tense yields clear benefits for Cotton. He recognizes that, if convicted today of the same § 841 offense to which he pleaded in 2007, he would face a maximum sentence of 20 years. He gets there in two steps. First, he points to the Fair Sentencing Act's modified drug quantity thresholds for cocaine charges under § 841 and correctly observes that his five-gram offense today would result in the new (and not enhanced) twenty-year maximum term of imprisonment. Second—to explain why his sentence would not be enhanced today upon the government's filing of a § 851 prior felony information—Cotton points to our 2020 decision in *United States v. Ruth*, where we concluded that prior Illinois cocaine convictions like Cotton's do not trigger an enhancement under 21 U.S.C. § 841. See 966 F.3d 642, 644 (7th Cir. 2020).

Cotton presses both points, for their combined effect reveals that if charged today with the same charges he faced in 2007, he would face a maximum sentence of 20 years—a class C felony—and thus, under the terms of § 3583(e)(3), a 2-year maximum revocation sentence. This is the reasoning the district court agreed with and adopted.

## B

The government has the better position. We arrive at that conclusion by taking a step back and returning, as we must, to the language Congress employed in § 3583(e)(3).

Recall that the maximum revocation sentence depends on whether "the offense that resulted in the term of supervised release is a class A felony," or a class B felony, and so on. The present-tense verb—"is"—cannot be divorced from what it modifies: "the offense that resulted in the term of supervised release." Everyone agrees that Cotton's 2007 conviction under § 841(a)(1) and (b)(1)(B) resulted in his term of supervised release. See *United States v. Ford*, 798 F.3d 655, 662 (7th Cir. 2015) (explaining that the "offense that resulted in the term of supervised release" is "the offense for which the defendant was initially placed on supervised release").

We can put the point another way. Section 3583(e)(3) does not ask whether *someone else's* conviction for the same conduct "is" or would be a class A, B, C, or D felony under current law. The statute asks whether *Shannon Cotton's* conviction under the 2007 version of 21 U.S.C. § 841(a)(1) and (b)(1)(B) "is" a class A, B, C or D felony. The answer is yes: Cotton's 2007 conviction was for a class A felony and that remains true today.

This construction of § 3583(e)(3)'s language aligns with the Supreme Court's observation in *Johnson v. United States* that post-revocation penalties arise from and are "treat[ed] ... as part of the penalty for the initial offense." 529 U.S. 694, 700 (2000); see also *United States v. Snyder*, 635 F.3d 956, 960 (7th Cir. 2011) (suggesting that § 3583(e)(3) refers to the felony

classification of the defendant's offense as of the time of sentencing).

In the final analysis, then, we conclude that Cotton's 2007 federal cocaine conviction remains and therefore "is" a class A felony. And that remains so notwithstanding the passage of the First Step Act or our decision in *Ruth*. Indeed, nothing about a favorable exercise of the discretion conferred by the First Step Act to reduce a sentence—a benefit Cotton received—alters an original judgment of conviction. As the district court stated in reducing Cotton's term of imprisonment under the First Step Act, "all other provisions of the [original] judgment … shall remain in effect." Cotton's sentence was reduced, but his original conviction is intact.

Nor did our decision in *Ruth* alter Cotton's felony classification. In *Ruth* we held that an Illinois conviction for cocaine distribution does not qualify as a predicate for enhanced penalties under § 841 and § 851 because the state's definition of cocaine is categorically broader than the parallel definition in the Federal Criminal Code. See 966 F.3d at 646–50. Cotton is right that if he were sentenced today, he would not be subject to the same penalties under § 841, nor would he receive a statutory sentencing enhancement based on his Illinois cocaine convictions. Again, though, Cotton is not being sentenced today: he remains convicted of the same offense and pursuant to the same judgment entered in 2007. Nothing we decided in *Ruth* modified Cotton's 2007 judgment of conviction. See *United States v. Jones*, 833 F.3d 341, 344 (3d Cir. 2016) (holding that intervening Supreme Court case law does not change the felony classification of the base offense under § 3583(e)(3)).

A broader point also deserves emphasis. This entire appeal is about the maximum revocation sentence Cotton faced

upon the district court's determination that he violated the conditions of supervised release. A revocation sentencing proceeding is not an opportunity to challenge an underlying conviction, and, even more specifically, § 3583(e)(3) does not sit alongside § 2255 and present an alternative means available to federal prisoners to challenge some aspect of their conviction or sentence. This point is clear in our case law. See *United States v. Torrez-Flores*, 624 F.2d 776, 781 (7th Cir. 1980) (holding that challenges to an original sentence cannot be raised during probation revocation proceedings); accord *United States v. Brock*, 39 F.4th 462, 465–66 (7th Cir. 2022) (employing similar reasoning with respect to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)).

## C

No doubt today's decision will disappoint Shannon Cotton. He is represented by a very able counsel who devised the best available arguments for preserving the district court's determination that the maximum revocation sentence cannot exceed two years. While we have concluded that the maximum is five years, it warrants underscoring that the district court on remand has discretion in applying the 18 U.S.C. § 3553(a) factors to select a reasonable revocation sentence below that upper limit. See 18 U.S.C. § 3583(e) (authorizing the consideration of specified § 3553(a) sentencing factors). In doing so, moreover, the district court may consider intervening changes in law since the time of Cotton's original sentencing in 2007 and the reduction he received under the First Step Act. Cf. *Concepcion v. United States*, 597 U.S. 481, 502 (2022) (holding that a district court may consider nonretroactive legal changes when resentencing under the First Step Act).

With this closing observation, we VACATE Cotton's revocation sentence and REMAND to the district court for resentencing.

PRYOR, *Circuit Judge*, concurring in part and dissenting in part. When Shannon Cotton was originally sentenced in 2007, he faced a maximum of life in prison, meaning his offense was a class A felony. More than a decade later, however, Cotton was resentenced under the First Step Act. And when the district court resentenced Cotton, it was required to recalculate Cotton's new statutory sentencing range. This range, in turn, became zero to 30 years in prison—reclassifying Cotton's offense as a class B felony. In other words, the district court used its discretion—as it was empowered to do by Congress—and retroactively applied the Fair Sentencing Act through the First Step Act to resentence Cotton.

The majority opinion, however, turns back the clock and erases the impact of Cotton's resentencing. I cannot agree with this conclusion, as it undermines the very purpose of the retroactive effect of the First Step Act. I therefore respectfully dissent in part.

## I.  BACKGROUND

### A.  Cotton's Sentencing and Intervening Events

In 2007, Shannon Cotton was charged with, and pleaded guilty to, distributing and possessing with intent to distribute at least five grams of cocaine. 21 U.S.C. § 841(a)(1), (b)(1)(B) (2007). Because Cotton had two prior state felony drug convictions, he was required to spend between 10 years and life in prison. §§ 841(b)(1)(B)(iii), 851 (2007). The district court was also obligated to impose at least eight years of supervised release. *Id.* § 841(b)(1)(B)(iii).

Later, the district court sentenced Cotton to almost 22 years (262 months) in prison. And it ordered eight years of supervised release to follow.

While Cotton was serving his sentence, Congress passed the Fair Sentencing Act in 2010. Pub. L. No. 111-220, 124 Stat. 2372 (2010). This Act—which applied only prospectively—increased the amount of crack cocaine needed to trigger certain mandatory minimum sentences under § 841. *Id.* § 2.

In 2018, Congress made the Fair Sentencing Act's benefits retroactive for certain defendants, including Cotton, through the First Step Act. Pub. L. No. 115-391, 132 Stat. 5194 (2018). This Act allowed district courts to resentence a defendant "as if" the Fair Sentencing Act's penalties were in effect when the offense was committed. *Id.* § 404(b). Cotton moved for a sentence reduction under the First Step Act. The district court granted the request in 2020, reducing Cotton's sentence to slightly more than 15 years (188 months). It also shortened Cotton's supervised release term to six years.

Several months after Cotton's resentencing, we decided *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020). In that case, we determined that prior Illinois cocaine convictions—like the ones used to increase Cotton's maximum sentence—do not trigger the § 841 sentencing enhancement. *Id.* at 644.

### B. Supervised Release Revocation

After Cotton completed the reduced sentence and was released from prison, he violated the terms of his supervised release. Because of this misstep, the district court was entitled to "revoke [Cotton's] term of supervised release" and require him to serve a term of imprisonment. 18 U.S.C. § 3853(e)(3).

Here, the government is asking us to decide the maximum sentence of imprisonment that the district court could have imposed on Cotton following the revocation. To answer this question, we must look to § 3583(e)(3), which sets the

maximum prison term for sentences following a revocation based on the classification of the underlying offense. "[I]f the offense that resulted in the term of supervised release is a class A felony," then the reimprisonment term is limited to five years. § 3853(e)(3).[1] A class B felony has a three-year maximum, a class C or D felony has a two-year maximum, and any other felony type has a one-year maximum. *Id.* These classifications are generally based on the maximum term of imprisonment authorized by the statute of conviction. § 3559(a).

Recall that, when Cotton was originally sentenced in 2007, he could have been sentenced to life imprisonment. That means his offense was a class A felony. § 3559(a)(1). Cotton points to the intervening events that, he believes, have sent his felony classification cascading down. First, Cotton argues that his receipt of First Step Act relief retroactively reduced the maximum sentence he could receive, thereby changing his class A felony into a class B felony. Second, he argues that our decision in *Ruth*, 966 F.3d at 644, made clear that his prior drug felonies were improperly used to hike up his maximum sentence. Applying *Ruth*, he contends, means that his offense classification should drop again—this time to a class C felony. The district court agreed with all of this and found that Cotton's underlying offense was a class C felony because he no longer had any prior drug convictions for a sentencing

---

[1] The majority uses interchangeably the terms "offense" and "conviction." *See Ante*, at 5, 7. Section 3583, however, speaks only to offenses—and not to convictions. In general, an "offense" is a criminal act, whereas a "conviction" is equivalent to a "judgment." *Offense*, BLACK'S LAW DICTIONARY (12th ed. 2024); *Conviction*, BLACK'S LAW DICTIONARY (12th ed. 2024). Because Cotton does not base his argument on the meaning of the word "offense," I refrain from considering whether the majority's use of the word "conviction" instead of "offense" undermines the statutory text in § 3583.

enhancement and his maximum term of imprisonment was now 20 years.

## II. ANALYSIS

The question presented in this appeal is whether these three intervening events—the Fair Sentencing Act, First Step Act relief, and *Ruth*—changed the classification of Cotton's "offense that resulted in the term of [his] supervised release." § 3583(e)(3).

Intervening events that do not have retroactive effect cannot alter the classification of an underlying felony because the underlying offense has not been altered. But intervening events that *are* retroactive in nature—like First Step Act relief—could change how a felony is classified. I agree with the majority that this question is a difficult one. But I see a dividing line that is well-supported by existing precedent.

### A. Non-Retroactive Changes—Fair Sentencing Act and *Ruth*

Non-retroactive changes in the law would not change the classification of an "offense" under § 3583(e)(3). That's because the "offense" is not affected by the new legal rule with only prospective effect. New statutes or judicial decisions that arise after sentencing generally do not bear on the statutory penalties for § 3583(e)(3) revocation sentences. *United States v. Ortiz*, 779 F.3d 176, 180–82 (2d Cir. 2015) (per curiam) (intervening decision on ACCA eligibility); *United States v. Johnson*, 786 F.3d 241, 244 (2d Cir. 2015) (Fair Sentencing Act); *United States v. Turlington*, 696 F.3d 425, 427–28 (3d Cir. 2012) (Fair Sentencing Act). This rule aligns well with our precedent that prohibits defendants from collaterally attacking their underlying conviction in the revocation context. *E.g.*, *United States*

*v. Torrez-Flores*, 624 F.2d 776, 781 (7th Cir. 1980). Although the majority does not say so explicitly, I understand it to be adopting this rule. I would as well.

This rule eliminates any argument that the passage of the Fair Sentencing Act of 2010 changed how Cotton's offense should be classified. The Act was not retroactive, *United States v. Clay*, 50 F.4th 608, 610 (7th Cir. 2022), and therefore fails to apply to defendants like Cotton. *Turlington*, 696 F.3d at 428 (noting that the Fair Sentencing Act does not apply to defendants who were both convicted and sentenced prior to the effective date of the Act).

Similarly, our 2020 decision in *Ruth*, 966 F.3d at 644, which came months after Cotton's resentencing, does not alter the classification of Cotton's offense. We have noted that *Ruth* generally does not have retroactive effect. *See United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023). Therefore, *Ruth* "cannot be applied" to reclassify Cotton's offense because he was sentenced and resentenced before *Ruth* was handed down. *Ortiz*, 779 F.3d at 180–81. Indeed, the Second Circuit came to the same conclusion when a defendant argued that an intervening case that was much like *Ruth* undermined his previous drug convictions and therefore changed the classification of his original offense. *Id.*

So, to the extent the majority concludes that non-retroactive changes in the law cannot alter the classification of Cotton's offense, I concur.[2]

---

[2] Of course, nothing stops a district judge from considering non-retroactive changes in the law in formulating the appropriate revocation sentence. *See Ante*, at 9; *see also* 18 U.S.C. §§ 3553(a)(6), 3583(e) (requiring the

## B.  Retroactive Changes—First Step Act Relief

Cotton's argument about First Step Act relief, however, has merit. I respectfully part ways with my colleagues on the impact of the district court's discretionary application of the Fair Sentencing Act to Cotton in 2020.

"[T]he First Step Act's central goal" was "to make retroactive the changes in the Fair Sentencing Act." *Concepcion v. United States*, 597 U.S. 481, 497 (2022). And when the district court exercised its discretion and gave Cotton this retroactive relief, Cotton's offense of conviction was reclassified because the maximum term of imprisonment was decreased. The majority instead concludes that Cotton's offense was not reclassified. This determination—which is unsupported by cited authority—undermines the very purpose of the First Step Act.

As we have instructed, when a district court finds a defendant eligible for relief under the First Step Act, the court must "recalculat[e] the statutory minimum and maximum that would have applied had … the Fair Sentencing Act been in effect at the time the [defendant] was originally convicted." *United States v. Fowowe*, 1 F.4th 522, 529 (7th Cir. 2021). The court may then reduce the defendant's sentence within those bounds. *See id.* at 529, 532. The court, however, is not required to do so; it has broad discretion to refuse to resentence an otherwise-qualified defendant. *Id.* at 527.

Here, the district court chose to use its discretion to resentence Cotton. It did not hold a hearing on Cotton's motion and its order was brief. But there's no reason to doubt that the

---

consideration of unwarranted sentencing disparities before sending a defendant back to prison).

court followed our instructions in *Fowowe*, and recalculated Cotton's new statutory minimum and maximum sentence "as if" the Fair Sentencing Act was in effect when Cotton was convicted. *See* 1 F.4th at 532.

Recall that Cotton was charged with, and pleaded guilty to, distributing and possessing with intent to distribute at least five grams of cocaine. A five-gram crack-cocaine offense with a prior felony drug conviction yielded a maximum of life in prison in 2007 and at least eight years of supervised release. 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), 851 (2007).

The Fair Sentencing Act, however, increased the threshold of crack cocaine necessary to trigger certain mandatory minimums. *Fowowe*, 1 F.4th at 525. And if this Act had been in place before Cotton's conviction, his five-gram crack-cocaine offense—with a prior felony drug conviction—would have yielded, at most, a 30-year prison sentence and a statutory minimum of six years of supervised release. §§ 841(b)(1)(C), 851.

This recalculated statutory sentencing range—zero to 30 years in prison—is what the district court was required to consult before resentencing Cotton in 2020. In other words, the district court retroactively reduced the maximum sentence that Cotton could face for his offense. These changes in the statutory maximums wrought by Cotton's resentencing caused Cotton's offense to become a class B felony. 18 U.S.C. § 3559(a)(1)–(2) (providing that offenses with maximum sentences of 25 years or more, but less than life, are class B felonies).

One other aspect of Cotton's resentencing confirms this. The district court, in addition to giving Cotton a shorter

prison sentence, also lowered his term of supervised release from eight years to six years. This is notable. A six-year supervised release term is legally permissible only if the district court believed that Cotton's offense now was one arising under § 841(b)(1)(C), which supplies a minimum of six years of supervised release, and not under § 841(b)(1)(B)(iii), which provides for at least eight years of supervised release. And if the district court understood Cotton's offense to be subject to § 841(b)(1)(C)'s penalties, then it also understood that Cotton could be sentenced to no more than 30 years in prison, given Cotton's prior felony drug convictions. Again, that means that Cotton's offense became a class B felony. 18 U.S.C. § 3559(a)(2).

The majority opinion resists this conclusion by highlighting that the district court stated in its First Step Act relief order that, except as otherwise provided, "all provisions of the [original] judgment … shall remain in effect." In the majority's view, this means that the class A nature of Cotton's offense was explicitly left untouched by the district court. But that overlooks the fact that the district court exercised its discretion and reclassified Cotton's offense through the retroactive application of the Fair Sentencing Act. This reclassification again is evidenced by the district court giving Cotton six years of supervised release at resentencing. This would not have been statutorily permissible if the court desired Cotton's offense remain a class A felony under § 841(b)(1)(B)(iii), which carries with it both a maximum of life in prison and a minimum of eight years of supervised release, given Cotton's prior felony drug convictions.

Our circuit has never explicitly held that First Step Act relief reclassifies offenses in this way. But we have assumed in

non-precedential *Anders* orders that this is the case. In *United States v. Perkins*, for example, the defendant received First Step Act relief and, at his ensuing revocation hearing, we noted that his 2007 crack-cocaine offense, which was once a class A felony, "became a [c]lass B felony" "[t]hrough the retroactive application of the Fair Sentencing Act." No. 21-1421, 2021 WL 5158000, at *2 (7th Cir. Nov. 5, 2021); *see United States v. Baker*, No. 21-2182, 2022 WL 523084, at *3 (7th Cir. Feb. 22, 2022) (same).

It appears that very few courts nationwide have addressed this specific issue. But the only federal appellate court to analyze the problem generally came to the same conclusion, albeit also in non-precedential fashion. *United States v. Jones*, No. 22-30480, 2023 WL 6458641, at *4 (5th Cir. Oct. 4, 2023). In *Jones*, the defendant moved for First Step Act relief at his supervised release revocation hearing. *Id.* at *1. He argued that the Act reclassified his original crack-cocaine offense from a class A felony to a class B felony. *Id.* The district court, however, determined it was required to apply the original class A classification. *Id.* at *2. The Fifth Circuit disagreed. *Id.* at *5. It found that the First Step Act revealed a "clear intention" to change sentencing laws retroactively, opening the door for the defendant's felony classification to be re-evaluated. *Id.* at *4. I am aware of no case that has come to the opposite conclusion.

In sum, Cotton's resentencing under the First Step Act in 2020 retroactively changed the classification of his underlying offense—that is, from a class A to a class B felony. To hold otherwise would be to deny Cotton the benefit of what might be "the most significant criminal justice reform bill in a

generation." *Pulsifer v. United States*, 601 U.S. 124, 155 (2024) (Gorsuch, J., dissenting) (citation omitted).

* * *

For these reasons, I concur with the majority to the extent that non-retroactive changes in the law—including the passage of the Fair Sentencing Act and our decision in *Ruth*—do not change the classification of Cotton's underlying offense. But I respectfully dissent from the majority's holding that Cotton's resentencing under the First Step Act did "nothing" to alter his offense classification. For these reasons, I would hold that Cotton's underlying offense is a class B felony and the district court on remand could sentence Cotton to no more than three years in prison.