# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 20-2594

———————————————

United States of America

*Plaintiff - Appellee*

v.

Isaiah Ramon Henderson

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Southern District of Iowa - Eastern

——————————

Submitted: April 15, 2021
Filed: August 27, 2021

——————————

Before LOKEN, WOLLMAN, and STRAS, Circuit Judges.

——————————

LOKEN, Circuit Judge.

A jury convicted Isaiah Henderson of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The presentence investigation report (PSR) determined that Henderson's base offense level was 24 based on prior Iowa and Illinois convictions for controlled substance offenses. See USSG §

2K2.1(a)(2). The district court[1] adopted this recommendation over Henderson's objection, resulting in an advisory guidelines sentencing range of 140 to 175 months imprisonment. The court sentenced Henderson to the statutory maximum of 120 months. On appeal, Henderson argues the evidence was insufficient to convict and the court committed sentencing error because his prior state-law convictions were not "controlled substance offenses" as defined in USSG § 4B1.2(b). We affirm.

## I. Sufficiency of the Evidence

At 2:30 a.m. on October 21, 2018, Detective Samantha Deney observed a fight involving three black women and a black man outside a Kwik Stop gas station in Davenport, Iowa. As Deney pulled into the parking lot, the women fled in two vehicles. The man entered the convenience store. Deney followed the vehicles and stopped one. Two hysterical women, Teonna Nimmers and Chaynel Hoskins, exited the vehicle. Nimmers screamed that a light-skinned black man with braids had a gun she described as a black semi-automatic firearm. Deney relayed that information to Officers Bret Digman and Evan Obert, who responded to the Kwik Stop. Upon arriving, Digman saw a light-skinned black man with braids exiting the store. He stopped this individual, later identified as Henderson, and patted him down, not finding a firearm. Obert went into the store where the only person inside, store clerk Katrina Kramer, told Obert she had seen Henderson walk toward the bathroom. Inside the bathroom trash can, Obert found a silver revolver with black electrical tape wrapped around the handle.

At trial, Nimmers testified she and Hoskins had arrived at the Kwik Stop that night after drinking and smoking marijuana. Hoskins saw an adversary, Laryn

---

[1] The Honorable John A. Jarvey, Chief Judge of the United States District Court for the Southern District of Iowa.

Williams, in another vehicle with Henderson. Hoskins left Nimmers' vehicle, approached Williams, and began hitting her. Nimmers joined the fighting women, encouraging Hoskins to beat up Williams. Henderson got out of the other vehicle and approached the fight. Nimmers testified Henderson raised his shirt and flashed a black firearm in his waistband at her. Nimmers yelled at Hoskins to leave, and the two women got into Nimmers's vehicle and left. Nimmers' trial testimony differed somewhat from her statements to police and her grand jury testimony. Hoskins, Williams, and Detective Deney testified they did not see a firearm.

After the jury found Henderson guilty of firearm possession, the district court denied his motion for judgment of acquittal or a new trial:

> Taking the evidence in the light most favorable to the Government, the Court holds there was sufficient evidence to support the Defendant's conviction, including knowing possession of a firearm. The Government presented an eye witness, Teaonna Nimmers, who identified the defendant as the person possessing a firearm on the night in question. The other evidence presented, including video of the defendant's movements inside and outside the convenience store, and testimony from law enforcement officers as well as store personnel, is consistent and supports the conclusion that the defendant knowingly possessed the firearm prior to placing it in the trash bin. As such, the interest of justice does not require Defendant be granted a new trial.

On appeal, Henderson argues the evidence was insufficient to prove he knowingly possessed a firearm. Applying a strict standard of review, we will affirm if, after viewing the evidence in the light most favorable to the verdict, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. United States v. Brooks-Davis, 984 F.3d 695, 697 (8th Cir. 2021).

The crux of Henderson's argument is that Nimmers and Hoskins were unreliable witnesses who each had a motive to direct the attention of law enforcement

-3-

away from themselves after driving under the influence of alcohol and marijuana and assaulting Williams. Henderson argues that Nimmers was not credible because her trial testimony differed from her prior statements to law enforcement and her grand jury testimony. Despite thorough cross-examination that probed these motives and inconsistences, the jury convicted Henderson. "It is the function of the jury, not an appellate court, to resolve conflicts in testimony or judge the credibility of witnesses." The jury's credibility findings "are virtually unreviewable on appeal." United States v. Hernandez, 569 F.3d 893, 897 (8th Cir. 2009) (citations omitted), cert. denied, 559 U.S. 915 (2010).

Henderson further argues the evidence was insufficient to prove he possessed the firearm recovered from the bathroom because no fingerprints were found on the gun, and store clerk Kramer testified she saw Henderson walk toward the bathroom but did not see him enter it. However, no one else was in the store at 2:30 a.m., Obert found the firearm almost immediately after Henderson left, Nimmers testified the gun she saw was black, and the revolver in the bathroom had black electrical tape around its handle. "The absence of corroborating physical evidence," such as fingerprints on the firearm, "is not a sufficient basis for us to conclude the jury acted unreasonably." United States v. Mack, 343 F.3d 929, 934 (8th Cir. 2003), cert. denied, 540 U.S. 1226 (2004); cf. United States v. Cox, 627 F.3d 1083, 1085-86 (8th Cir. 2010).

For these reasons, the court did not err in denying Henderson's motion for acquittal or a new trial based on insufficiency of the evidence.

## II. The Sentencing Issue

The district court increased Henderson's base offense because he committed this offense "subsequent to sustaining at least two felony convictions of . . . a

controlled substance offense." USSG § 2K2.1(a)(2). "'Controlled substance offense has the meaning given that term in § 4B1.2(b)" and in Application Note 1 to the § 4B1.2 Commentary. USSG § 2K2.1, comment. (n.1). Henderson has two prior state court felony convictions, a 2014 Iowa conviction for Delivery of a Schedule II Controlled Substance in violation of Iowa Code § 124.401(1)(c), and a 2015 Illinois conviction for Unlawful Delivery of a Controlled Substance in violation of 720 ILCS 570/401. On appeal, Henderson argues that neither conviction meets the definition of controlled substance offense in USSG § 4B1.2(b). We review *de novo* whether a prior conviction is a sentencing enhancement predicate. United States v. Boleyn, 929 F.3d 932, 936 (8th Cir. 2019), cert. denied, 140 S. Ct. 1138 (2020). "In determining whether a prior . . . conviction qualifies as a predicate offense . . . we apply a categorical approach that looks to the statutory definition of the prior offense[.]" Id. "[W]hen a federal enhancement provision incorporates state offenses by language other than a reference to generic crimes . . . the inquiry is focused on applying the ordinary meaning of the words used in the federal law to the statutory definition of the prior state offense." Id.

**A.** Henderson first argues that neither the Iowa nor the Illinois conviction qualifies because the state statutes include inchoate controlled substance offenses. Application Note 1 to USSG § 4B1.2 expressly provides that "'controlled substance offense' include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." As Henderson acknowledges, his argument that this commentary impermissibly expands the § 4B1.2(b) definition of a controlled substance offense is foreclosed by Eighth Circuit precedent holding that inchoate offenses are § 4B1.2(b) controlled substance offenses. See United States v. Merritt, 934 F.3d 809, 811 (8th Cir. 2019), cert. denied, 140 S. Ct. 981 (2020), citing United States v. Mendoza-Figueroa, 65 F.3d 691 (8th Cir. 1995) (en banc), cert denied, 516 U.S. 1125 (1996). As a panel, we may not overrule these decisions.

**B.** Henderson further argues that his prior Illinois conviction is not a § 4B1.2(b) controlled substance offense because the Illinois statute's definition of "controlled substance" is overbroad. The Illinois statute, 720 ILCS 570/401, defines controlled substances to include substances not found in Controlled Substances Act schedules that list controlled substances that are included in the federal *statutory* enhancement for committing a "serious felony offense." See 18 U.S.C. § 924(e)(2)(A); 21 U.S.C. §§ 802(6) and (57), 841(b)(1)(A). At first blush, this is a strong argument. We recently agreed with the Seventh Circuit that 720 ILCS 570/401 is "categorically broader than the federal definition" because under Illinois law, cocaine substances include "optical, positional, and geometric isomers," while the federal schedules include only "optical and geometric isomers." United States v. Oliver, 987 F.3d 794, 807 (8th Cir. 2021), citing United States v. Ruth, 966 F.3d 642, 645-47 (7th Cir. 2020), cert. denied, 141 S. Ct. (2021). Henderson argues the federal schedules govern this issue under the so-called "Jerome presumption" that courts "generally assume, in the absence of a plain indication to the contrary, that Congress when it enacts a statute is not making the application of the federal act dependent on state law." Jerome v. United States, 318 U.S. 101, 104 (1943),

We conclude the contention founders upon closer examination. An enhancement under USSG § 2K2.1(a)(2) is not a statutory enhancement, like the 25-year mandatory minimum sentence at issue in Oliver. It is a sentencing guidelines enhancement, adopted by the Sentencing Commission to carry out its statutory mandate to "assure that the guidelines specify a sentence to a substantial term of imprisonment for categories of defendants [that have] a history of *two or more prior Federal, State, or local felony convictions* for offenses committed on different occasions." 28 U.S.C. § 994(i)(1) (emphasis added).

The Commission included in Part 4B of the Guidelines career offender provisions that substantially increase the now-advisory guidelines sentencing range for a defendant that "has at least two prior felony convictions of either a crime of

violence or a controlled substance offense." USSG § 4B1.1(a). Consistent with 28 U.S.C. § 994(i)(1), the term "controlled substance offense" is defined in § 4B1.2(b) as "an offense under federal or state law . . . ." The Guidelines provide no separate definition of "controlled substance." Henderson urges us to limit the extent to which Illinois controlled substance offense convictions under 720 ILCS 570/401 are included in § 4B1.2(b) by replacing the Illinois statutory definition of "controlled substance" with the Controlled Substance Act's definition and schedules.

In United States v. Sanchez-Garcia, 642 F.3d 658, 661-62 (8th Cir. 2011), the defendant used the Controlled Substances Act definition of controlled substance in arguing that a California controlled substances statute was overbroad. We did not hold that a state law crime must involve one of those substances to be a "controlled substance offense" under the career offender Guidelines. We simply affirmed the Guidelines enhancement at issue without addressing that question.

Other circuits have addressed the issue and reached conflicting conclusions. In our view, the answer to this question must begin with textual analysis. Section 4B1.2(b) defines a "controlled substance *offense*" that qualifies for various repeat-offender enhancements as "an offense under federal *or state law*." In Ruth, the Seventh Circuit concluded that 720 ILCS 570/401 is "categorically broader than the federal definition" in the Controlled Substances Act and therefore "is not a predicate 'felony drug offense' under [Ruth's] applicable federal penalty statute, 21 U.S.C. § 841(b)(1)(C)." 966 F.3d at 647, 650. The Court then took up this guidelines career offender issue and concluded that "Ruth's 2006 cocaine conviction under [720 ILCS 570/401] is a controlled substance offense according to the career-offender guideline." 966 F.3d at 654. The "definition of controlled substance offense does not incorporate, cross-reference, or in any way refer to the Controlled Substances Act." Id. at 651. Thus, "the career offender enhancement does not limit its definition of controlled substance offense to specific federal violations." Id. at 654 (cleaned up); see United States v. Sheffey, 818 F. App'x 513, 520 (6th Cir. 2020) ("There is no

-7-

requirement [in USSG § 4B1.2(b)] that the particular controlled substance underlying a state conviction also be controlled by the federal government.") (quotation omitted). The Fourth Circuit recently set out the textual analysis more thoroughly:

> [O]nly an offense under federal or state law may trigger the [§ 4B1.2(b)] enhancement. An "offense" is, of course, a breach of the law. . . . So to satisfy the ordinary meaning of "offense," there must be a violation or crime subject to either federal or state law. . . . [T]he ordinary meaning of . . . "controlled substance," is *any type of drug* whose manufacture, possession, and use is *regulated by law*. Here, the state law . . . satisfies this second criterion of § 4B1.2(b). . . . The state has not restricted itself to regulating only those substances listed on the federal drug schedules. Instead, the offense identifies those substances that are "regulated" under Virginia law, which has its own drug schedules. So a conviction under [the Virginia statute] categorically satisfies the second criterion of § 4B1.2(b) [and therefore] is a "controlled substance offense" under § 4B1.2(b).

United States v. Ward, 972 F.3d 364, 370-71 (4th Cir. 2020) (cleaned up; emphasis in original), cert. denied, 2021 WL 2637911 (Jun. 28, 2021).

We agree with these decisions. "The career-offender guideline defines the term controlled substance offense broadly, and the definition is most plainly read to 'include state-law offenses related to controlled or counterfeit substances punished by imprisonment for a term exceeding one year.'" Ruth, 966 F.3d at 654 (citation omitted). There is no requirement that the particular substance underlying the state offense is also controlled under a distinct federal law. There is no cross-reference to the Controlled Substance Act in § 4B1.2(b), like the cross-references to 26 U.S.C. § 5845(a) and 18 U.S.C. § 841(c) in the definition of the term "crime of violence" in § 4B1.2(a)(2). Therefore, there is no textual basis to graft a federal law limitation onto a career-offender guideline that specifically includes in its definition of controlled substance offense, "an offense under . . . state law." Grafting the limitation

urged by Henderson would defeat the Sentencing Commission's obvious intent, consistent with its statutory mandate under 28 U.S.C. § 994(i)(1), to include prior convictions for controlled substance offenses "under . . . state law."

Some circuits have interpreted § 4B1.2(b) as limiting prior state convictions for a "controlled substance offense" to convictions based on a "controlled substance" under the Controlled Substances Act. These decisions focus on the need for national uniformity in federal Guidelines sentencing reinforced by a "Jerome presumption" that "the application of a federal law does not depend on state law unless Congress plainly indicates otherwise." United States v. Townsend, 897 F.3d 66, 71 (2d Cir. 2018); see Ruth, 966 F.3d at 653 (collecting cases).

We disagree with this reasoning. First, the Supreme Court has rarely cited Jerome and never to our knowledge in a Guidelines case. See Gamble v. United States, 139 S. Ct. 1960, 1967 (2019) (citing Jerome as background in declining to overrule the dual-sovereign double jeopardy rule). Jerome considered whether state law should be incorporated into an *element* of the federal statutory bank robbery offense. Second, Jerome only stated there is an "assumption . . . based on the fact that the application of federal legislation is nationwide." 318 U.S. at 104. Supreme Court precedents make clear that this type of assumption only applies in the absence of contrary congressional intent. "There are, of course, instances in which the application of certain federal [law] may depend on state law. . . . But this is controlled by the will of Congress." N.L.R.B. v. Natural Gas Util. Dist., 402 U.S. 600, 603 (1971) (quotation omitted). Third, and most important, the intent of Congress to depart from pure nationwide sentencing uniformity is clearly evidenced in 28 U.S.C. § 994(i)(1), which directs the Sentencing Commission to fashion guidelines that enhance the federal sentence of a defendant who has "a history of two or more prior . . . State . . . felony convictions." This statute requires that the term "controlled substance offense . . . under . . . state law" in USSG § 4B1.2(b) be construed

consistent with its plain meaning, not the interpretation urged by Henderson, even if this arguably weakens "national uniformity."

At sentencing, Henderson disputed the PSR enhancement recommendations, but he did not contest the fact of his Iowa and Illinois controlled substance offense convictions. Because the enhancement is proper based on the fact of a prior controlled substance offense conviction under state law, the district court did not err in imposing the § 2K2.1(a)(2) enhancement.

The judgment of the district court is affirmed.

_____