# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3830
_____

United States of America

*Plaintiff - Appellee*

v.

Patrick Miller Webb, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern

_____

Submitted: December 12, 2022
Filed: June 12, 2023

_____

Before SMITH, Chief Judge, ARNOLD and STRAS, Circuit Judges.

_____

SMITH, Chief Judge.

A jury convicted Patrick Webb of distributing a controlled substance near a protected location, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), 851, and 860(a); possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and being a felon in possession of a firearm, in violation of 18

U.S.C. §§ 922(g)(1), 922(g)(3) and 924(a)(2). The district court[1] sentenced Webb to 380 months' imprisonment. On appeal, he argues that the district court erred in instructing the jury and challenges the reasonableness of his sentence. We affirm.

## I. *Background*
### A. *Factual History*

On December 12, 2019, Webb traveled from Des Moines, Iowa, to Dubuque, Iowa, in order to conduct a sale of methamphetamine to someone he did not know was a government informant. Webb set up the sale at a car wash located approximately 750 feet from Cleveland Park. Webb and the informant got into Webb's vehicle together and went through the car wash. While inside the car wash bay, Webb passed a black plastic bag containing 15.8 ounces of methamphetamine to the informant in the back seat. In exchange, the informant gave Webb $6,000 in cash.

Law enforcement apprehended Webb after he left the car wash. They retrieved the methamphetamine from the controlled buy. They then searched Webb's car, finding a loaded Ruger 9mm pistol wrapped in a t-shirt. An agent from the Iowa Division of Narcotics Enforcement interviewed Webb after he had been read his *Miranda*[2] rights. During the interview, Webb admitted that he knew the informant because they were in prison together. Webb also admitted that he gave the methamphetamine to the informant. He acknowledged that he knew he could not possess firearms because he was a felon. The methamphetamine was sent to the Iowa Division of Criminal Investigation crime lab, which determined that it was 449.4 grams of pure methamphetamine.

---

[1]The Honorable Charles J. Williams, United States District Judge for the Northern District of Iowa.

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

## B. *Procedural History*

### 1. *Trial*

A grand jury charged Webb with three counts. Count 1 alleged that Webb distributed a controlled substance near a protected location. Prior to trial, the parties jointly filed proposed jury instructions. However, several of the instructions included alternative proposals from each party. Instruction No. 12 was one such instruction. Although both proposals contained three identical elements of Count 1, Webb's proposal went further and added an entrapment defense as an element, which read:

> *Four*, either the defendant was willing to distribute 50 grams or more of actual (pure) methamphetamine before he was approached or contacted by [the informant]; or the government, or [the informant] acting on the government's behalf, did not persuade or talk the defendant into distributing 50 grams or more of actual (pure) methamphetamine.

R. Doc. 53, at 22 (emphasis in original).

The parties' submissions each contained an identical proposed Jury Instruction No. 15, which also related to Count 1. It read:

> If you find the defendant guilty of distributing actual (pure) methamphetamine as alleged in Count 1, you must determine whether the location at which the crime occurred was within 1,000 feet of the real property comprising a playground. The 1,000-foot zone can be measured in a straight line from the playground irrespective of actual pedestrian travel routes. The government does not have to prove that the defendant agreed, knew, or intended that the offense would take place within 1,000 feet of a playground.
>
> The term "playground" means any outdoor facility (including any parking lot appurtenant thereto) intended for recreation, open to the public, and with any portion thereof containing three or more separate

apparatus intended for the recreation of children including, but not limited to, sliding boards, swingsets, and teeterboards.

*Id*. at 27.

The district court also filed proposed instructions. It included the government's proposed Instruction No. 12 and the parties' proposed Instruction No. 15.

Webb objected to the district court's proposed Instruction Nos. 5, 9, 19, and 22. He also advised the court that he would ask it to administer his instruction on entrapment and that he believed that he had made a sufficient showing to warrant the instruction. Notably, he made no objection as to Instruction Nos. 12 or 15. Ultimately, the district court adopted Instruction Nos. 12 and 15, which were listed as Nos. 11 and 14, respectively, in the Preliminary Jury Instructions. Webb did not object to either at trial. The district court gave an entrapment instruction in the Final Jury Instructions as Instruction No. 27.

The jury found Webb guilty on all counts. Webb moved for acquittal or a new trial, which was denied by the district court. Webb did not challenge the instructions in his motion for acquittal or new trial.

## 2. *Sentencing*

Before sentencing, probation services amended Webb's presentence report (PSR) to apply the career offender enhancement under U.S.S.G. § 4B1.1. This enhancement increases a defendant's offense level if that "defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). The PSR explained that Webb's prior Iowa convictions of delivery of a controlled substance and possession of a controlled substance with intent to deliver were predicate offenses for the enhancement.

The amendment was based on this court's opinion in *United States v. Henderson*, which was issued after the first PSR but before sentencing. 11 F.4th 713, 718–19 (8th Cir. 2021). In *Henderson*, the panel held that "[t]he career-offender guideline defines the term controlled substance offense broadly, and the definition is most plainly read to 'include state-law offenses related to controlled or counterfeit substances punished by imprisonment for a term exceeding one year.'" *Id.* at 718 (quoting *United States v. Ruth*, 966 F.3d 642, 654 (7th Cir. 2020)). The *Henderson* panel explained that the enhancement does not require the substance underlying a state conviction to be controlled by federal law because "[t]here is no cross-reference to the Controlled Substance Act in [the Guidelines definition of 'controlled substance offense'], like the cross-references to 26 U.S.C. § 5845(a) and 18 U.S.C. § 841(c) in the [Guidelines] definition of the term 'crime of violence.'" *Id.* The panel rejected the defendant's overbreadth argument.

The government, relying on *Henderson*, argued the enhancement applied. It asserted that because Webb's prior convictions involved substances that were regulated by Iowa law, they were necessarily "controlled substance offenses" under *Henderson*.

Webb argued that the timing of *Henderson* implicated "certain due process and equal protection and, frankly, disparity issues." R. Doc. 124, at 10:17–18. He argued that prior to *Henderson*, the Eighth Circuit had held that state laws broader than the Guidelines' definition of "controlled substance offense" could not serve as predicates for the career offender enhancement. He maintained that his decision to take the case to trial depended on this prior interpretation of then-existing law. He asserted that *Henderson* altered the legal landscape and thus adversely affected his legal strategy to pursue trial when the PSR was amended to account for *Henderson* and apply the career offender enhancement. In response to the amended PSR, he argued that the enhancement should not apply or, alternatively, that the district court should vary

downward to a punishment based on a Guidelines calculation without application of the career offender enhancement.

The district court first noted that *Henderson* was binding and that it was compelled to follow it and apply the enhancement. The court also addressed Webb's request for a variance based on *Henderson*'s impact. The court rejected the variance option, stating, "[D]efendants make judgment calls all the time on how they predict the guidelines are going to come out at sentencing, and there is no guarantee of how anybody is going to interpret the guidelines, let alone how the courts are going to interpret the guidelines or interpret the law." *Id*. at 33:1–6. It noted that Webb took a risk on how the Guidelines would be calculated when he decided to take the case to trial. It concluded that varying downward based on *Henderson* would unduly benefit Webb by preventing him from bearing the consequences of taking that risk.

Additionally, Webb asked that the court consider the disparity created by the 10-to-1 penalty ratio in the Guidelines' treatment of actual methamphetamine and mixtures containing methamphetamine. The district court declined, noting that although it "would vote to alter the current . . . way that ice methamphetamine is treated in the guidelines and also in the statutes . . . versus powder methamphetamine," it deferred to the will of Congress and the Sentencing Commission. *Id.* at 33:25–34:4. It also noted that as a practical matter, actual methamphetamine presents a graver risk per ounce than a mixture of methamphetamine, which justified the Guidelines' treatment of the substance.

The district court calculated Webb's Guidelines range as 420 months to life based on a total offense level of 37 and a criminal history category of VI. Despite rejecting Webb's arguments as to the career offender enhancement and the methamphetamine disparity, the district court varied downward based on the facts supporting the protected location enhancement. Specifically, the court explained that

the enhancement was designed to protect children and that this drug deal did not place children in danger as it occurred at the outskirts of the 1,000-foot perimeter.

After considering the seriousness of the offense, Webb's personal characteristics, his criminal history, and his remorse for the damage done by his conduct, the district court sentenced Webb to 320 months on Count 1 (distribution near a protected location) and 120 months on Count 3 (felon in possession), to run concurrently. It then imposed a consecutive 60-month sentence for Count 2 (possession of a firearm in furtherance of drug trafficking). This produced a sentence of 380 months, a 40-month downward variance from the low end of the Guidelines range.

## II. *Discussion*

On appeal, Webb challenges the district court's decision to separate the protected location element of Count 1 from the other elements. He argues that doing so was an abuse of discretion because it constructively amended the indictment and denied him a complete entrapment defense. He further argues that his trial counsel was ineffective for failing to object.

Webb also challenges his sentence. He claims that his 380-month sentence is both procedurally erroneous and substantively unreasonable. For the reasons stated below, we affirm Webb's convictions and sentence.

### A. *Jury Instructions*
#### 1. *Constructive Amendment and Denial of Defense*

The doctrine of invited error bars Webb's claims that the district court constructively amended the indictment and denied him a complete entrapment defense. "[A]n erroneous ruling generally does not constitute reversible error when it is invited by the same party who seeks on appeal to have the ruling overturned." *United States v. Campbell*, 764 F.3d 874, 878 (8th Cir. 2014) (quoting *Roth v.*

*Homestake Mining Co. of Cal.*, 74 F.3d 843, 845 (8th Cir.1996)). In other words, "the doctrine of invited error applies when the trial court announces its intention to embark on a specific course of action and defense counsel specifically approves of that course of action." *Id.* (cleaned up).

Here, Webb specifically requested separating the protected location element—Proposed Instruction No. 15—from the remainder of the elements of Count 1—Proposed Instruction No. 12. Webb then filed objections to certain instructions but failed to object to either Instruction No. 12 or 15 prior to trial. He further failed to do so at trial or in his post-trial motion. Webb "cannot complain that the district court gave him exactly what his lawyer asked." *United States v. Thompson*, 289 F.3d 524, 526 (8th Cir. 2002). We, therefore, decline to review either of these claims.

## 2. *Ineffective Assistance of Counsel*

Webb does not take issue with his trial counsel's proposal of the instructions that he now challenges on appeal. He merely takes issue with his counsel's failure to object to the instructions. In any event, his claim fails because Webb cannot show his lawyer's failure to object prejudiced him.

"To prove ineffective assistance of counsel, [Webb] must show (1) his attorney's performance fell below an objective standard of reasonableness, and (2) a reasonable probability that, but for that deficient performance, the result of the proceeding would have been different." *Love v. United States*, 949 F.3d 406, 409 (8th Cir. 2020) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 697 (1984)). When the second element of this test "can be dispositive of a case, we need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted); *see also Strickland,* 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

Here, the record contains testimony, surveillance videos, and body cam footage that clearly show Webb selling approximately a pound of methamphetamine to a government informant for $6,000 in a car wash that was within 1,000 feet of a public park. Thus, given the overwhelming evidence of Webb's guilt, his counsel's failure to object to the jury instructions had no discernible effect on the trial verdict. As such, we affirm Webb's convictions.

## B. *Sentencing*

Webb challenges his sentence, arguing that the district court procedurally erred by relying on *Henderson* to apply the career offender enhancement and by considering the Guidelines mandatory on the issue of methamphetamine sentencing disparities. He additionally argues that his sentence is substantively unreasonable.

"When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply a deferential abuse-of-discretion standard." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quotations omitted). "We review a district court's sentence in two steps: first, we review for significant procedural error; and second, if there is no significant procedural error, we review for substantive reasonableness." *United States v. O'Connor*, 567 F.3d 395, 397 (8th Cir. 2009).

### 1. *Career Offender Enhancement*

Webb first argues that this court's decision in *Henderson* unforeseeably expanded the scope of criminal liability under the career offender enhancement. Webb asserts that before *Henderson*, *United States v. Sanchez-Garcia*, 642 F.3d 658 (8th Cir. 2011), was the controlling law of the circuit. He argues that under *Sanchez-Garcia*, a state statute that criminalized more conduct than a comparable federal law was overbroad and could not serve as a predicate for a Guidelines career offender enhancement. He avers that *Henderson*—which defined "controlled substance offense" by its plain text and did not require an underlying state law to categorically

match corresponding federal law—violated his due process and equal protection rights.

> It is an open question whether the Due Process Clause also forbids retroactive judicial expansion of criminal punishments, as opposed to criminal liability. But assuming without deciding that the Fifth Amendment precludes certain retroactive increases in punishment occasioned by judicial decision, it does so only where such decisions are unexpected and indefensible.

*United States v. Evans*, 63 F.4th 1157, 1159 (8th Cir. 2023) (cleaned up).

Like Webb, the defendant in *Evans* argued that applying *Henderson*—which was issued after he was convicted but before he was sentenced—violated his due process and equal protection rights. *Id.* at 1159. The *Evans* panel rejected the defendant's due process argument for three reasons. First, it rejected the argument because *Henderson* was consistent with the decisions of other circuits. *Id.* Second, it rejected the argument because contrary to the defendant's assertions, *Sanchez-Garcia* did not address the question at issue in *Henderson*. *Id.* While quoting *Henderson*, the panel further explained that *Sanchez-Garcia* "did not hold that a state law crime must involve one of the Controlled Substance Act substances to be a 'controlled substance offense' under the career offender Guidelines, but . . . simply affirmed the Guidelines enhancement at issue without addressing that question." *Id.* (cleaned up). Third, the panel rejected the argument because *Henderson*'s holding was derived from the plain text of the Guidelines. *Id. Evans* concluded that the application of *Henderson* was "neither unexpected nor indefensible." *Id.*

As to the defendant's equal protection argument, the panel concluded that there was no equal protection violation if there was "'any reasonably conceivable state of facts that could provide a rational basis' for the application of *Henderson*." *Id.* at 1160 (quoting *United States v. Binkholder*, 909 F.3d 215, 218 (8th Cir. 2018)). It then

determined that because *Henderson*'s holding "was neither unexpected nor indefensible, its interpretation of the guidelines had a rational basis." *Id.*

*Evans* controls here. *Henderson*'s interpretation of the career offender enhancement was "neither unexpected nor indefensible" and "had a rational basis." *Id.*[3] The district court did not err in applying this enhancement.

2. *Methamphetamine Sentencing Disparity*

Webb next argues that the district court erroneously considered the Guidelines mandatory by ignoring the 10-to-1 sentencing disparity between actual methamphetamine and mixtures of methamphetamine. He argues that the Guidelines' treatment of the two substances creates an unreasonable disparity and should not apply. He contends that the district court's application of the Guidelines despite its express disagreement with the Guidelines' treatment of the substances showed that the court treated the Guidelines as mandatory.

Webb, however, misconstrues the district court's statements. We do not read the court's statement as intimating that it was bound by the Guidelines' treatment of actual methamphetamine and mixtures containing methamphetamine. Instead, the district court expressly deferred to Congress and the Sentencing Commission on the issue and applied the Guidelines as currently written. In fact, the court stated a rational basis for the enhancement when it explained that actual methamphetamine is more potent than mixtures containing methamphetamine. It noted that this meant that actual methamphetamine has a higher dosage per kilo. The court further noted that a distributer of actual methamphetamine can cause more people to become addicted to the drug because actual methamphetamine can produce more doses. Thus,

---

[3]We note that the equal protection analysis in *Evans* applied a plain error level of review, whereas here, we review de novo. The standard of review, however, does not render *Evans* inapplicable. The analysis concluding *Henderson* was neither unexpected nor indefensible provides *Henderson* has a rational basis.

the court found that the disparity is reflective of the danger and damage that actual methamphetamine causes when compared to mixtures containing methamphetamine. Accordingly, the district court did not treat the Guidelines as mandatory.

### 3. *Substantive Reasonableness*

Lastly, Webb's argument that his sentence was substantively unreasonable fails. Webb's argument for substantive unreasonableness stands on the weak pillars of his arguments for procedural error, which we have already rejected. Further, "[a] sentence below or within the Guidelines range is presumptively reasonable on appeal." *United States v. Barraza*, 982 F.3d 1106, 1116 (8th Cir. 2020) (quoting *United States v. Canania*, 532 F.3d 764, 773 (8th Cir. 2008)). "When a district court varies downward and sentences below a presumptively reasonable Guidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further." *United States v. Canamore*, 916 F.3d 718, 721 (8th Cir. 2019) (per curiam). Webb offers no convincing reasoning to rebut this presumption. Thus, his below-Guidelines-range sentence was not an abuse of discretion.

### III. *Conclusion*

Accordingly, we affirm Webb's conviction and sentence.

_____